IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH WONG, | ) |
| Plaintiff, | ) Case No. 11-CV-07357 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

This matter is before the Court upon motion of the plaintiff, Elizabeth Wong, to compel production of notes taken during interviews of union members of the Palatine Classroom Teachers' Council ("CTC") (doc. # 74) and the Illinois Educational Support Personnel Association ("ESPA") (doc. #72). For the reasons set forth below, the Court grants both motions.

### I.

Plaintiff was removed from her job as Assistant Principal of Frank C. Whiteley Elementary School in March 2011 (doc. #74: Plaintiff's Motion to Compel Production from Non-Party Classroom Teachers' Council ("Motion to Compel CTC") at 1). In April 2011, Ms. Wong filed an EEOC charge and later this federal lawsuit against the Board of Education, Community Consolidated School District No. 15, Scott Thompson, Mary Szuch, John Fenton,

---

[1] Pursuant to Local Rule 72.1, this case has been referred to this Court for the purpose of holding proceedings related to discovery supervision, all discovery motions, entry of final pretrial order, settlement conference, and all non-dispositive motions (docs. ## 18, 45).

and James Garwood, alleging illegal discrimination in violation of federal law, and asserting supplemental state law claims (*Id.*).

Neither the CTC nor the ESPA is named as a defendant in Ms. Wong's lawsuit. The CTC is an employee organization certified by the Illinois Educational Labor Relations Board ("IELRB") as the exclusive bargaining representative of non-administrative, certified employees of Defendant Community Consolidated School District 15 ("District 15") (doc. #77: Non-Parties Palatine Classroom Teachers' Council's and Educational Support Personnel Association's Response in Opposition to Plaintiff's Motion to Compel Production ("Resp. Br.") at 1). The ESPA is an employee organization certified by the IELRB as the exclusive bargaining representative of the non-administrative, non-certified employees of defendant District 15 (*Id.* at 2). The CTC and the ESPA are local affiliates of the Illinois Education Association-NEA ("IEA") (*Id.* at 1-2). The IEA, a state-wide employee organization, provides legal services, lobbying efforts, collective bargaining support, and information to local affiliates and their individual members (*Id.*).

In April or May 2011 and January 2013, counsel for District 15 (which is a defendant in this case) conducted interviews of Whiteley teachers and support staff (doc. # 72: Plaintiff's Motion to Compel Production from Non-Party Illinois Educational Support Personnel Association ("Motion to Compel ESPA") at 2; Motion to Compel CTC at 2), to gather evidence regarding events that culminated in the termination of Ms. Wong's employment. The CTC and the ESPA representatives attended these interviews. On March 13, 2013, plaintiff's counsel served the CTC and the IEA[2] with subpoenas seeking a wide array of documents from 2008

---

[2] The plaintiff's motions are directed to the CTC and the ESPA, but the subpoenas attached to the motions are directed to the CTC and the IEA. The CTC and the ESPA deny that a subpoena was ever properly served on the ESPA because the subpoena was issued to and served upon the IEA (Resp. Br. at 3 n.1). Nevertheless, the ESPA responded to the motion, and although the CTC and the ESPA point out this issue in a footnote, they do not raise

2

through 2011 (Motion to Compel ESPA, Ex. A; Motion to Compel CTC, Ex. A; Resp. Br., Exs. B, C). In an email following up on a telephone conversation with IEA counsel on March 26, 2013, plaintiff's counsel narrowed the subpoena request to seek only the notes taken by CTC President Lisa Nuss and ESPA President Angie Drzkowski during January 2013 interviews of Whiteley teachers, and by IEA Uniserv Director Amy Kunz during May 2011 interviews with Whiteley secretaries, Pam Tackett and Kathy Weber, which counsel for defendant District 15 conducted (Resp. Br. at 4, Ex. D). Amy Kunz is the IEA staff person who is assigned to work with the CTC and the ESPA and assist in its dealings with defendant District 15 (*Id.* at 2).

Subsequently, plaintiff's counsel again clarified the subpoena request during a telephone conversation with IEA and CTC counsel on April 8, 2013, to seek only (1) the notes taken by union representatives during the May 2011 interviews of Ms. Weber and Ms. Tackett; and (2) the notes taken by the CTC representatives of the January 2013 interviews of the Whiteley teachers (Motion to Compel ESPA at 2; Motion to Compel CTC at 2). CTC and ESPA declined to produce the notes, and plaintiff filed the present motions to compel on July 11, 2013 (docs. ## 72, 74).

The CTC and the ESPA filed a joint response to plaintiff's motions, objecting that the handwritten interview notes are protected from production pursuant to a union representative privilege and a union representative work product privilege under the Illinois law, and that the requests are unduly burdensome (Resp. Br. at 4-5). Defendants have also filed a brief opposing

---

this affirmatively as a reason to deny the motion to compel. Indeed, they proceed to oppose the motion on the merits. Accordingly, we deem this argument waived.

the motions to compel (doc. #81: Defendants' Response In Opposition to Plaintiff's Motions to Compel Production from Non-Parties CTC and ESPA ("Def. Resp. Br.")).[3]

## II.

The Federal Rules of Civil Procedure set a generous standard for discovery: parties may obtain discovery regarding any matter, not privileged, which is relevant to any party's claim or defense, subject to any limitations imposed by the court. Fed. R. Civ. P. 26(b). The CTC, the ESPA, and District 15 assert that a union representative-employee privilege protects the representatives' notes from disclosure.

Rule 501 of the Federal Rules of Evidence provides a general guideline for assessing claims of privilege in federal court, providing that courts should interpret the common law "in the light of reason and experience." Fed. R. Evid. 501. Federal common law governs the applicability of privilege in cases based upon a federal cause of action, even when, as here, the complaint also alleges supplemental state law claims. *See Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (holding that where the principal claim is federal, the district court is not required to apply state law in determining whether material is privileged); *see also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004).

No controlling authority establishes a federal privilege protecting employee-union representative communications. *See Jenkins v. Bartlett*, 487 F.3d 482, 491 n.6 (7th Cir. 2007) ("We do not suggest that an independent privilege exists for communications between an individual and his union representative"). Under Illinois law, however, there is a codified union

---

[3] We note that plaintiff styles her motions as ones to compel production pursuant to Federal Rule of Civil Procedure 37. However, Rule 37 governs motions to compel production by *parties* – and neither the CTC nor the ESPA is a party. The proper vehicle to seek to compel these non-parties to produce documents would be a motion under Federal Rule of Civil Procedure 45 to enforce the subpoenas. However, since the CTC and the ESPA do not raise this procedural defect, we deem it waived.

4

agent-union member privilege, which – with a number of exceptions – protects a union agent from having to disclose "any information he or she may have acquired in attending to his or her professional duties or while acting in his or her representative capacity." 735 Ill. Comp. Stat. 5/8-803.5. The CTC and the ESPA assert that in *Bell v. Village of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011), the court adopted this state-law privilege as federal common law, and that this Court should apply the privilege to protect the notes at issue here from discovery.

In *Bell v. Village of Streamwood*, the plaintiff in an excessive force case sought to depose a former union representative concerning his suspected conversations with one of the defendant police officers about the events at issue in the case. 806 F. Supp. 2d at 1054. At the deposition, the attorney for the union representative asserted the Illinois union agent privilege and the union representative refused to answer questions. *Id.* In determining "whether to expand the federal common law of privilege to include communications protected by the Illinois statute," the district court did not adopt the "relatively broad privilege" codified by Illinois and chose to create a more circumscribed one, which applied only "in the context of anticipated and ongoing disciplinary proceedings." *Id.* at 1055-56. The *Bell* court crafted a federal common law employee-union representative privilege that covered: "communications made (1) in confidence; (2) in connection with 'representative' services relating to anticipated or ongoing disciplinary proceedings; (3) between an employee and his union representative; (4) where the union representative is acting in his or her official representative capacity." *Id.* at 1056. In addition, the court cautioned that "[l]ike the attorney-client privilege, the employee-union representative privilege is limited in that it extends only to communications, not to the underlying facts. Discussing a relevant fact with a union representative will not shield it from discovery." *Id.* at 1056-57.

5

Of course, this Court is not bound by the decision in *Bell*. *See Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970 (7th Cir. 2012) ("district courts' decisions are not authoritative, even in the rendering district (other district judges may disagree)"). We express no opinion on whether we would recognize a similar federal common law privilege, given the same facts. That said, we agree with plaintiff that the elements *Bell* found necessary to establish any privilege are not present here.

Significantly, there was no communication made in confidence relating to anticipated or ongoing disciplinary proceedings. There is no assertion that the notes do not reflect any communication between the union representatives and the employees. Rather, the union representatives simply attended interviews between defense counsel and teachers or staff, and took notes of those interviews. What's more, there is no claim that the interviews conducted by defense counsel were attorney-client meetings. The attorneys conducting the interviews did not represent any of the teachers or staff who were questioned. Accordingly, the employees could not have had a reasonable expectation of confidentiality in the statements they made to the school district's lawyers, and the employees could not assert any privilege to protect what they told those attorneys. The fact that the interviews were not themselves privileged greatly diminishes, if not eliminates, any expectation of privacy in the union representatives' notes of those interviews.

Finally, unlike in *Bell*, where the employee police officer was one of the defendants, the employees being interviewed here were neither defendants nor the subjects of anticipated or ongoing disciplinary proceedings. The union representatives in the instant case were not present to give advice to the members, because the member was neither a party to the litigation nor the

focus of an actual or threatened disciplinary action. Where the employee is not the subject of an investigation, the expectation of and the need for confidentiality lessens.

In contrast, the plaintiff has a significant interest in obtaining evidence that would document what was said during these interviews, which could be used to refresh the witnesses' recollection at the interviews or to impeach them. Protecting the representatives' notes here would unnecessarily interfere with the search for truth. Thus, even were we to endorse the limited privilege recognized in *Bell*, that privilege would not extend to protect the union representatives' notes from disclosure in this case.

### III.

We are also not persuaded to craft a federal common law privilege that would reach farther than the one designed in *Bell* in order to protect the union representatives' notes in this case. CTC and ESPA argue that the representatives' notes were created in their capacities as union representatives and in furtherance of those duties, and that a privilege should extend to "any information [the union agent] may have acquired in attending to his or her professional duties or while acting in his or her representative capacity," which the Illinois privilege covers. 735 Ill. Comp. Stat. 5/8-803.5.

Federal courts should not create and apply an evidentiary privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). Our analysis begins with the "primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *Jaffee*, 518 U.S. at 9 (internal quotation marks and citations omitted); *see Mem'l Hosp. for McHenry Cnty.*, 664 F.2d at 1061 ("because

evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed"). In addition, we must weigh the need for truth against the public and private interests the privilege serves, and determine whether those interests outweigh the likely evidentiary benefit that would result from the denial of the privilege. *See Jaffee*, 518 U.S. at 9-11.

The need for disclosure here is significant. To be sure, plaintiff can obtain information from the interviewees by deposition. But the notes provide unique evidence about what those interviewees said at an earlier time, which could help plaintiff assess and potentially impeach the credibility of those interviewees if they offer testimony at deposition or at trial that differs from what they offered in the interviews. In addition, requiring disclosure here will have little impact on the interests sought to be protected by the Illinois privilege. The confidentiality of communications between union representatives and their union members is not at issue here: rather, the issue in this case is the respondents' desire to protect notes of non-privileged interviews conducted by a third party – attorneys for the school district. The privacy concerns here are not compelling, and disclosing the notes is unlikely to harm the union member-union representative relationship that the state-law privilege seeks to protect.

The CTC, the ESPA, and District 15 urge us to create a federal common law privilege that could potentially apply in all federal cases, based on an Illinois privilege that is defined and limited by statute.[4] They have not offered any indication of whether this type of privilege is

---

[4] The Illinois statute sets forth several circumstances in which the union agent "may use or reveal information obtained during the course of fulfilling his or her professional duties," including "when required by court order." 735 Ill. Comp. Stat. 5/8-803.5(b)(3).

widely accepted[5] or rare; nor can they claim that the confidential relationship between a union representative and a union member has the same strong historic roots as those generally afforded the protection of a common law privilege, such as husband and wife, clergy and communicant, or attorney and client. Consequently, we find no need to pioneer and establish a new privilege in this case, particularly since the balance of the affected interests weighs squarely in favor of disclosure.

## IV.

Finally, the CTC and the ESPA also argue that this Court should deny the motions to compel because the requests are overly broad and unduly burdensome on the CTC and the ESPA and that the plaintiff failed to identify the documents that she is seeking (Resp. Br. at 9). We are mindful that in the context of third-party discovery, we need to consider the unwanted burden thrust upon third parties.

However, on March 26, 2013, plaintiff's counsel narrowed the requests to seek only the notes taken by the union representatives in District 15 counsel's interviews during January 2013 and May 2011 with Whiteley teachers and staff (Resp. Br. at 4). Subsequently, on April 8, 2013, plaintiff's counsel again articulated the request during a telephone conversation with IEA and CTC counsel as seeking only notes taken in May 2011 by the IEA representatives of Kathy Weber and Pam Tackett and in January 2013 by the CTC representatives of Whiteley teachers during interviews conducted by counsel for defendant District 15 (Motion to Compel ESPA at 2; Motion to Compel CTC at 2). We conclude that the request as narrowed to cover only notes taken during these two specific time periods is not unduly burdensome.

---

[5]The Supreme Court stated in *Jaffee* that "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege," and "the existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege." 518 U.S. at 12-13.

## CONCLUSION

In weighing the competing interests here, both "reason and experience" persuade us that the need for probative evidence outweighs any marginally-implicated policy interests in protecting the union representative-union member relationship. Consequently, we grant the plaintiff's motions to compel (docs. ## 72, 74). The CTC and the ESPA shall produce the notes in question by October 7, 2013.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: September 30, 2013